LOVE, SUPERINTENDENT OF BANKS, *v.* HYTKEN.

(Division B. Nov. 13, 1933.)

[150 So. 777. No. 30802.]

Cooper & Thomas, of Indianola, for appellant.

Frank E. Everett, of Indianola, for appellee.

Argued orally by **Earl T. Thomas,** for appellant, and by **Frank E. Everett,** for appellee.

**Griffith, J.,** delivered opinion of the court.

On December 31, 1927, appellee leased a store building from Mrs. Minnie S. Holt for a term of five years, the lease expiring on December 31, 1932. He executed to Mrs. Holt sixty notes, evidencing the rental to be paid by him, each for one hundred fifty dollars and payable one every month in a successive series. Later, but at a time not specifically stated in the agreed statement of the facts, Mrs. Holt had become heavily indebted to the Bank of Indianola, the indebtedness being evidenced by several notes given by Mrs. Holt to the bank and which notes had been pledged as collateral security by the bank to two foreign banks for money borrowed from them by the Indianola bank. After Mrs. Holt had executed her said notes to the Indianola bank and after they had been pledged as collateral to the two foreign banks, Mrs. Holt indorsed and delivered those of the said rent notes not then due, to the Indianola bank as collateral security for the notes which she had theretofore executed to the Indianola bank, the agreement at the time being that as appellee paid the rent notes to the Indianola bank, the proceeds would be placed to the credit of the notes which Mrs. Holt as maker had theretofore executed to the bank.

About the 1st of January, 1931, Mrs. Holt renewed her indebtedness to the Indianola bank. She executed a note in full therefor and gave a new security for the same by way of a deed of trust on certain lands, the live stock thereon, and the crops to be grown on said land during

the year 1931. This note was thereupon indorsed and transferred by the Indianola bank to the two foreign banks, not as an absolute transfer, but as collateral for loans, for which the Indianola bank was still indebted to the two foreign banks. The Indianola bank at all times retained the rent notes in its possession and collected the rent each month from appellee, delivering to him the notes as paid, until the Indianola bank failed and went into the hands of appellant for liquidation, on or about January 1, 1932.

At the time the Indianola bank closed its doors, appellee had on deposit therein the sum of one thousand thirteen dollars and thirteen cents, and thereafter, when appellant, as liquidator of the bank, called on appellee to pay his rent notes held by the bank as aforesaid, appellee declined to pay same unless and until the amount of his deposit due to him by the bank would be credited upon his said notes. The liquidator declined to accede to this demand and sued appellee to recover the amount of the rent notes then outstanding with the result that the chancellor rendered a decree crediting against the rent notes the one thousand thirteen dollars and thirteen cents deposit, and the liquidator appeals.

The contention of the liquidator is that when Mrs. Holt's notes executed by her as maker to the Indianola bank were by that bank transferred to the foreign banks as collateral security for the debts due by the Indianola bank to the foreign banks, this operated to carry to the foreign banks as collateral the rent notes which had been transferred to the Indianola bank by Mrs. Holt as collateral security to her notes to that bank, and that although the Indianola bank retained the physical possession of the rent notes and regularly collected them from appellee as they successively fell due, yet the Indianola bank was a mere trustee for the foreign banks in respect to the rent notes. This contention may, for the purposes of discussion, be accepted as well grounded so far as con-

cerned the notes which had been executed by Mrs. Holt to the Indianola bank prior to her renewal of her entire indebtedness in January, 1931, into one note, at which time she gave the large security, not theretofore existing, by way of a deed of trust on lands, personal property, and crops. But it does not inevitably follow that because the rent notes had been an unqualified collateral to her previous notes they were unqualified collateral, or collateral at all, to the renewal note.

While ordinarily, and in the absence of that which indicates to the contrary, a renewal note carries the collateral and all the collateral which was pledged to secure the debt or debts of which the new note is a renewal, the previous pledge is as much within the control of the parties for withdrawal or modification or limitation by agreement or understanding between them at the time of the renewal as is an agreement at that time to give different security or security which is deemed more available or adequate, and the giving of an entirely different security, especially when adequate, may, under the particular circumstances, taken in connection with the conduct of the parties, raise a fair and reasonable inference that the previous pledge was in fact, by substitution, withdrawn, or else qualified or limited to a particular purpose in respect to the debt secured; and we think the circumstances and conduct of the parties here do raise a fair inference to the latter effect, as we shall now mention.

The case was tried on an agreed statement of facts, but the statement is entirely silent upon the vital point whether, at or about the time of the renewal, there was any other or further agreement between Mrs. Holt and the bank about these rent notes, but there is a significant fact covered in the statement to the effect that none of the proceeds of the rent notes were ever placed to the credit of Mrs. Holt's notes to the bank, ''but she was allowed to use the proceeds for the payment of taxes and

other purposes by agreement with the cashier of said bank.'' Keeping in mind that the facts disclose that Mrs. Holt was heavily indebted and that the new security on the renewal of the indebtedness embraced lands and the live stock thereon and the crops to be grown on said lands, it is but reasonable to infer that it was included within the plans of the parties in this new arrangement, and the acts of the parties so indicate, that these rent notes were to be left free of a collateral pledge to the foreign banks so that the proceeds thereof under the direction, oversight, and control of the Indianola bank could and should, as a matter of right, be made available as a ready means for current cash from time to time to exonerate the property then being mortgaged as to taxes and other charges that might embarrass the security of that mortgage and for use in financing the crops included in the mortgage. Obviously, it would be useless to take a mortgage on crops to be produced without some available arrangement for current funds with which to finance that production, and it is equally unreasonable to suppose that a mortgagor would tie up her property by a mortgage including the crops and thereby cut herself off from being able to give security for the funds necessary to carry on a crop without having an agreed arrangement at the time of the mortgage transaction by which necessary current funds would as a matter of right be made available to her requirements in performing the mortgage obligations.

We have stated so much to show that it is a reasonable inference deducible from all the facts and circumstances shown in the record, and particularly when we note the manner in which the proceeds of these rent notes were actually handled, that it was understood at the time of this renewal, or sufficiently near thereabouts as to be a part of that transaction, that thereby and thereafter the rent notes were not to go as collateral to the foreign banks, but that the Indianola bank, the ultimate owner of

the mortgage note, should have and hold these rent notes and their proceeds for the purpose of seeing to it that the proceeds thereof should be used by or under the control of the bank for the purposes above mentioned, or for other purposes having the same legal effect as to the pledge of the rent notes. The above being a reasonable inference, deducible as aforesaid, and the chancellor having decreed for appellee, we must assume that he acted upon that inference, and if, under the law he was permitted upon this record to draw reasonable inferences, the decree must be affirmed.

This brings into view what is said to be the prevailing rule that where a case is tried on an agreed statement of facts and an essential or determinative fact is omitted from the agreed statement, the court is not authorized to infer that determinative fact and pronounce judgment upon it (20 R. C. L. 1105), unless the determinative fact to be supplied by inference is one which must necessarily or inevitably be inferred from the other facts embraced in the agreed statement (60 C. J. 80, 85). We have searched among the cases in other jurisdictions, which announce the rule as above stated, to find some sustainable reasons for it, but without much success. The stated rule may hold good as to partial or particular facts agreed upon for a particular and limited purpose when the case is to be completed and is completed by testimony taken in the ordinary way by witnesses; but when the entire case is submitted on an agreed statement of facts, the rule in this state is—and has been so long that we doubt that many of our seasoned practitioners have ever thought of any other—that the court may draw the reasonable and legitimate inferences therefrom in the same way and to the same extent that those inferences could have been drawn had the facts as agreed upon, been adduced by the attendance of witnesses and the taking of their testimony in open court.

Affirmed.